1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| SHENZHEN JINGPINCHENG ELECTRONIC TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> BLISSLIGHTS, LLC, BLISSLIGHTS, INC., BLISS HOLDINGS, LLC, and DOES 1-10, <br><br> Defendants. | Case No.:  21cv1393-GPC(RBB) <br><br> **ORDER GRANTING DEFENDANT BLISSLIGHTS, LCC'S MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> **[Dkt. No. 5.]** |

        Before the Court is Defendant Blisslights, LLC's motion to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 9(b).  (Dkt. No. 5.)  Plaintiff filed
an opposition on September 25, 2021.  (Dkt. No. 24.)  A reply was filed on October 8,
2021.  (Dkt. No. 25.)  The Court finds that the matter is appropriate for decision without
oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the
Court GRANTS Defendant's motion to dismiss with leave to amend.

                                    **Background**

        On August 3, 2021, Plaintiff ShenZhen JingPinCheng Electronic Technology Co.,
Ltd. ("Plaintiff") filed a complaint against Defendants Blisslights, LLC; Blisslights, Inc.;

and Bliss Holdings, LLC  (collectively "Defendants") seeking declaratory judgment of noninfringement and invalidity of U.S. Patent No. 8,057,045 ("the '045 Patent"), declaratory judgment of lack of standing by Defendants to assert the '045 Patent, interference with business relationship and unfair business practices under California Business & Professions Code sections 17200, 17500.  (Dkt. No. 1, Compl.)

Plaintiff is a Chinese limited company with its principal place of business in Shenzhen City, Guangdong Province, China and specializes in the research, design, and distribution of lighting products and other consumer electronics products such as the Galaxy Star Projector, the Accused Product.  (*Id*. ¶ 2.)  Defendant Blisslights, LLC ("Defendant" or "Blisslights") is a California limited liability company with its principal place of business in Oceanside, CA and is the alleged owner of the '045 Patent.  (*Id*. ¶ 3.) Defendants Blisslights, Inc. and Bliss Holdings, LLC are California entities that have been suspended from doing business by the Secretary of the State of California for violating various state laws and regulations.  (*Id*. ¶¶ 4, 5.)  On June 14, 2016, Bliss Holdings LLC was involuntarily petitioned for a Chapter 7 bankruptcy.  (*Id*. ¶ 6.) Defendant Blisslights, LLC[1], only, filed a motion to dismiss.  (Dkt. No. 5.)

## Discussion

### A.   Legal Standard on Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  The Court "resolves a facial attack as it would a motion to dismiss

---

[1] Defendant Blisslights, LLC explains that Blisslights, Inc. and Bliss Holdings, LLC were liquidated in bankruptcy and are defunct entities.  (Dkt. No. 5 at 10.)  Despite the legal status of these entities, the Court notes that they have not been served.

under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). Ultimately, the plaintiff has the burden to demonstrate that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

In its moving brief, Defendant does not specifically articulate but appears to launch a facial attack on subject matter jurisdiction as it relies on allegations in the Complaint. (Dkt. No. 5.) Then in opposition, Plaintiff argues that Defendant has made a factual attack on subject matter jurisdiction and responds with evidence outside the complaint, (Dkt. No. 24 at 6), to which Defendant replies that it has only made a facial challenge, (Dkt. No. 25 at 2). Because Defendant is not relying on documents outside the complaint in its moving papers, the Court analyzes Defendant's Rule 12(b)(1) motion as a facial challenge to subject matter jurisdiction and accepts the allegations in the Complaint as true with all reasonable inferences drawn in favor of Plaintiff to determine whether the elements of subject matter jurisdiction have been sufficiently alleged.

**B.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate

where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

/ / /

/ / /

**C.     Legal Standard on Federal Rule of Civil Procedure 9**

Where a claim alleges fraud or is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp*., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct).

**D.     First and Second Causes of Action – Declaratory Judgment Act Standing**

On the first two causes of action for declaratory relief, Defendant argues that the conclusory allegations in the Complaint do not establish an actual case or controversy between the parties and fail to claim that Plaintiff's lost sales would have been made within the United States. (Dkt. No. 5 at 16-17.) Plaintiff responds that it has alleged a case or controversy based on patent infringement claims made by Defendant to Amazon.com[2] and that this case is about sales in the United States. (Dkt. No. 24 a 10-12.)

---

[2] In support of subject matter jurisdiction, Plaintiff, claiming that Defendant is raising a factual challenge, relies on the declaration of Weir Huang, Plaintiff's business executive, in order to buttress its Article III standing allegations, (Dkt. No. 24, Huang Decl. at 28-29). (Dkt. No. 24 at 6 n. 2; *id.* at 9 n. 3.) However, because Defendant brings a facial challenge to subject matter jurisdiction, the Court may not consider matters outside the Complaint and declines to consider Huang's declaration. However, because the Court grants Plaintiff leave to amend, Plaintiff may include these additional facts to support subject matter jurisdiction in the amended complaint

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The DJA's standing requirement refers to Article III's case and controversy for justiciable claims.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 119, 126-27, (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).  To satisfy Article III's standing requirements, a plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 127.

The DJA allows potential infringers to bring claims against patent holders if there is an actual case or controversy between the parties.  *Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1327–28 (Fed. Cir. 2012).  In patent cases, the Federal Circuit has held that for a plaintiff to establish it has Article III standing in a declaratory judgment action, a plaintiff must allege "(1) an affirmative act by the patentee related to the enforcement of his patent rights, [citation omitted] and (2) meaningful preparation to conduct potentially infringing activity, [citation omitted]."  *Ass'n for Molecular Pathology v. U.S. Patent and Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *reversed on other grounds by Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013)).  The Federal Circuit has required "conduct that can be reasonably inferred as demonstrating intent to enforce a patent."  *Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).  The plaintiff seeking declaratory judgment bears the burden of showing the existence of an "actual controversy" sufficient to confer Article III jurisdiction.  *Organic Seed Growers & Trade Ass'n v. Monsanto Co*., 718 F.3d 1350, 1354-55 (Fed. Cir. 2013).  A patent infringement matter must be dismissed if Article III standing is not proper at the time of the filing of the suit.  *Schreiber Foods, Inc. v. Beatrice Cheese, Inc*., 402 F.3d 1198, 1203 (Fed. Cir. 2005).

### 1.    Affirmative Act

The Complaint alleges that "Defendants have . . . taken steps . . .  to assert the '045 Patent against Plaintiff" and relies on Exhibit B to the complaint, a patent infringement complaint Defendant made with Amazon.com.  (Dkt. 1, Compl. ¶ 11.)  Exhibit B to the Complaint is an undated communication from Amazon.com to an unidentified seller providing notice that Amazon.com had received a report from Blisslights that two products listed under ASIN Nos. B096XGNTBD and B080DNVLKMF infringe its patent rights and encouraged the seller to "work directly with the rights owner to resolve the dispute."  (Dkt. No. 1-2 at 21.)

Defendant argues that these summary claims to support Article III standing are conclusory and that Exhibit B fails to identify the seller or show the referenced ASIN Nos. are in fact Plaintiff's products.  (Dkt. No. 5 at 17.)  Plaintiff contends that the Complaint alleges that Defendants took steps in this district to assert the '045 Patent against Plaintiff.  (Dkt. No. 24 at 11.)

The Federal Circuit has indicated that, for an affirmative act, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other's product line.' [But] [h]ow much more is required is determined on a case-by-case analysis." *3M Co. v. Avery Dennison Corp*., 673 F.3d 1372, 1378-79 (Fed. Cir. 2012).  Obviously when "a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support [Article III standing.]" *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96 (1993) (emphasis in original).  However, an "explicit threat is not necessary.  Indeed, there need not be any kind of threat. So long as there is an actual charge of infringement, or even an effective charge of infringement, that is enough to give rise to a case or controversy, particularly where a specific infringing product is identified by the patentee." *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd*., 975 F. Supp. 2d 1083, 1091 (N.D. Cal. 2013).  For example, in *Dror v. Kenu, Inc*., Case No. 19-cv-03043-LB, 2019 WL 5684520 (N.D. Cal. Nov. 1, 2019), the district court found subject matter jurisdiction was alleged in a

declaratory judgment complaint where the plaintiff had sold its product on Amazon, but Amazon removed the product over concerns of patent infringement alleged by the patentee and refused to relist the product.  *Id.* at *2, 5, 7.  In subsequent correspondence between the plaintiff and the patentee, the patentee stated it remained "firm" in its belief that the plaintiff's product infringed, and further stated "[a]lthough we had not been planning to file suit against Store in view of the Amazon takedown, please be aware that Kenu will not hesitate to seek prompt and effective judicial relief should this matter be pressed further."  *Id.* at *7 n. 42, 43.  The court concluded there was a justiciable controversy because Plaintiff was not only charged with infringing the defendant's patent, but there was also a threat to sue if the plaintiff pressed the matter.  *Id.* at *7.

Further, "'[w]hen the conduct of the patentee can be 'reasonably inferred as demonstrating intent to enforce a patent' against the declaratory judgment plaintiff, subject matter jurisdiction will arise, even when that intent is demonstrated implicitly." *Amazon.com, Inc. v. Straight Path IP Grp. Inc.*, Case No. 5:14–cv–04561–EJD, 2015 WL 3486494, at * 3 (N.D. Cal. May 28, 2015) (quoting *Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363–64 (Fed. Cir. 2009) (jurisdiction sufficiently alleged despite the patentee's assertions "that it never approached Amazon regarding licensing, never accused Amazon of infringement' when the patentee's infringement claims against third parties were based on the third party's 'use of Amazon's products.")).

Here, the Complaint's allegation that Defendant has taken steps to assert the '045 Patent is conclusory and provides no facts to describe these steps.  Moreover, Exhibit B attached to the Complaint provides no support because it is not dated, does not allege who the recipient of the communication is and does not specifically identify Plaintiff's products as infringing.  (*See* Dkt. No. 1-2 at 21.)  Accordingly, the Court concludes that Plaintiff has failed to allege that Defendant took an affirmative act concerning enforcement of its patent rights.

/ / /

/ / /

### 2.     Meaningful Preparation to Conduct Potentially Infringing Activity

Defendant also asserts that Plaintiff has not alleged that it engaged in any meaningful preparation to make, use, distribute, sell or offer to sell its products in the United States.  (Dkt. No. 5 at 17.)  In opposition, Plaintiff argues it is obvious that it has alleged potentially infringing conduct in the United States because Defendant is a company in California, that caused Plaintiff's products, listed with Amazon.com, a Delaware corporation residing in Seattle, WA, to become unavailable to its customers in the United States.  (Dkt. No. 24 at 13.)

"[I]t is elementary patent law that the patent is coextensive with the borders of sovereignty which granted it. Thus, the owner of a United States patent is protected against infringement only in the United States and its territories, and infringement thereof cannot be predicated on acts consummated in a foreign country." *Dr. Beck & Co. G.M.G.H. v. Gen. Elec. Co.*, 210 F. Supp. 86, 92 (S.D.N.Y. 1962), *aff'd,* 317 F.2d 538 (1963).

Here, the Complaint, itself, presents no allegation that Plaintiff engaged in any meaningful preparation to conduct potentially infringing activity in the United States. Therefore, the second factor to support Article III standing is not sufficiently alleged.

In conclusion, the Court GRANTS Defendant's motion to dismiss the first two cause of action for declaratory judgment for lack of subject matter jurisdiction under Rule 12(b)(1).  Even though the Court grants dismissal on the first two causes of action, the Court considers Defendant's additional arguments on the second cause of action based on inequitable conduct.

Prior to addressing the remainder issues in Defendant's motion, the Court must highlight the difficulty in reviewing the parties' papers.  On many of the causes of action or claims that Defendant moves to dismiss, neither party clearly articulates the legal standard necessary to state many of the claims or causes of action.  Instead, the parties delve straight into arguing the facts underlying each cause of action without providing the legal landscape and only occasionally cite to caselaw to support an element of a cause of

21cv1393-GPC(RBB)

action.  Moreover, the parties fail to provide factual context to support their arguments.
This method of briefing is not helpful to the Court.  Because the Court grants dismissal of
the complaint with leave to amend, the Court admonishes the parties that, in any future
motions, the parties must provide the relevant law, and the applicability of the facts to the
law.

**E.      Second Cause of Action – Declaratory Judgment of Unenforceability[3] Based on Inequitable Conduct**

Defendant also moves to dismiss the second cause of action for declaratory
judgment of unenforceability under Rule 9(b) and the standard laid out in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (9th Cir. 2009) for the five instances of alleged
inequitable conduct by Blisslights before the Patent Office.[4]  (Dkt. No. 5 at 17-18.)
Plaintiff alleges it has alleged facts to support inequitable conduct that renders the '045
Patent unenforceable.  (Dkt. No. 24 at 14-15.)

"Inequitable conduct is an equitable defense to patent infringement that, if proved,
bars enforcement of a patent."  *Therasense Inc. v. Becton Dickinson and Co.*, 649 F.3d
1276, 1285 (Fed. Cir. 2011) (*en banc*).  Inequitable conduct consists of three elements:
(1) "the patent applicant made misrepresentations or omissions material to patentability,"
(2) the applicant "did so with the specific intent to mislead or deceive the [Patent
Office]," and (3) "that deceptive intent was the single most reasonable inference to be
drawn from the evidence."  *Ohio Willow Wood Co. v. Alps S., LLC*, 813 F.3d 1350, 1357
(Fed. Cir. 2016).  On materiality, a party must show that the patentee "withheld or
misrepresented information that, in the absence of the withholding or misrepresentation,
would have prevented a patent claim from issuing."  *Id*. at 1357; *see also Therasense*, 649
F.3d at 1291 ("in assessing the materiality of a withheld reference, the court must

---

[3] Even though the cause of action is labeled declaratory judgment of invalidity, (Dkt. No. 1, Compl. at 6), it should be labeled declaratory judgment of unenforceability

[4] United States Patent and Trademark Office.

determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference."). Specific intent to commit acts constituting inequitable conduct may be inferred from indirect and circumstantial evidence. *Therasense*, 649 F.3d at 1290.

"[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). To plead inequitable conduct in patent cases under Rule 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Walmart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). A complaint that "simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27.

Plaintiff relies on 37 C.F.R. § 1.56 to support its inequitable conduct claims. (Dkt. No. 1, Compl. ¶¶ 49, 50; Dkt. No. 24 at 15.) That section provides that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor," including "a duty to disclose to the Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a). The Court notes that § 1.56(a) also states that "[t]here is no duty to submit information which is not material to the patentability of any existing claim." *Id.* Finally, relevant to this case, "no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. *Id.* It is to be noted that this section only applies to individuals associated

with the filing or prosecution of a patent application which include the inventor, an attorney or agent, or any other person who is substantively involved in the preparation or prosecution of the application.  *Id.* § 1.56(c).  Thus, "[t]he duty of disclosure applies only to individuals, not to organizations.  For instance, the duty of disclosure would not apply to a corporation or institution."  Manual of Patent Examining Procedure ("MPEP") § 2001.01.  To the extent that certain inequitable conduct allegations, such as failure pay patent maintenance fees, fail to specify which individual acted in bad faith, they must be dismissed.

### 1.   Inequitable Conduct – Failure to Disclose Relevant Prior Art, (Dkt.  No. 1, Compl. ¶¶ 63-72)

First, the Complaint alleges that Defendant and its counsel failed to disclose relevant and material prior art in the prosecution of the '045 Patent.  (Dkt. No. 1, Compl. ¶ 63.)  Specifically, Plaintiff claims that during the prosecution of the '045 Patent from August 12, 2009 to October 26, 2011, Defendant and its attorneys, Shelley M. Cobos ("Cobos"), Gordon E. Gray III, Norman Lee, and Jacob W. Neu, knew of numerous prior art references concerning the patentability of the claims in the '045 Patent but failed to disclose these relevant prior art references by not filing an Information Disclosure Statement ("IDS") with the Patent Office.  (*Id.* ¶ 63.)  During the prosecution of the '345 Patent,[5] the parent patent of the '045 Patent, Defendant and counsel Cobos filed an IDS with the Patent office disclosing some relevant prior art references.  (*Id.* ¶ 64.)  At that time, the Patent Office initially rejected all the claims of the '345 Patent based on at least six[6] prior art references, U.S. Patent Nos. 3,707,786; 5,649,827; 6,623,126; 2,230,039; 4,497,582; and 4,588,384.  (*Id.* ¶ 65.)  In fact, on July 9, 2009, Defendant and its counsel had an interview with a patent examiner about the '345 Patent concerning how these prior

---

[5] Defendant acknowledges that the '345 Patent is the parent patent of the '045 Patent.  (Dkt. No. 5 at 18 n. 2.)

[6] The Complaint states there were seven prior art references; however, only six are listed.  (Dkt. No. 1, Compl. ¶ 65.)

art references rendered all claims obvious.  (*Id.* ¶ 66.)  Because Defendant and its counsel were aware of and failed to disclose the existence of relevant prior art references in the prosecution of the '045 Patent, they breached their duties to disclose relevant prior art references to the Patent Office.  (*Id.* ¶¶ 68, 69.)  Plaintiff alleges that Defendant prosecuted the '045 Patent as a child of the '345 Patent in order to intentionally hide prior art references from the Patent Office because it was eager to monopolize the market.  (*Id.* ¶ 71.)  Because Defendant failed to disclose and intentionally hid these prior art references, the '045 Patent would not have issued.  (*Id.* ¶ 72.)

Defendant contends that, as a matter of law, this allegation fails to state a claim because the Manual of Patent Examining Procedure ("MPEP") § 609.02 provides that,

> When filing a continuing application that claims benefit under 35 U.S.C. 120 to a parent application (other than an international application that designated the U.S.), it will <u>not</u> be necessary for the applicant to submit an information disclosure statement in the continuing application that lists the prior art cited by the examiner in the parent application unless the applicant desires the information to be printed on the patent issuing from the continuing application (for continued prosecution applications filed under 37 CFR 1.53(d), see subsection A.1. below). The examiner of the continuing application will consider information which has been considered by the Office in the parent application.

Manual of Patent Examining Procedure ("MPEP") § 609.02(I) (underlining in original).

In opposition, Plaintiff cites to the next provision in the MPEP, § 609.02[7], which

---

[7] 2. Continuation Applications, Divisional Applications, or Continuation-In-Part Applications Filed Under 37 CFR 1.53(b)
For these types of applications, in order to ensure consideration of information previously submitted, but not considered, in a parent application, applicant must resubmit the information in the continuing application in compliance with 37 CFR 1.97 and 37 CFR 1.98. Pursuant to 37 CFR 1.98(d), if the IDS submitted in the parent application complies with 37 CFR 1.98(a) to (c), copies of the patents, publications, pending U.S. applications, or other information submitted in the parent application need not be resubmitted in the continuing application.

Manual of Patent Examining Procedure ("MPEP") § 609.02(II)(A)(2).

provides that where information previously submitted but not "considered" by the Patent Office in a parent application, the applicant must resubmit the information in the continuing application.  (Dkt. No. 24 at 16 & n.4.)  According to Plaintiff, "considered" means that the examiner places her initials next to a prior art referenced listed on the applicant's IDS.  (*Id.*)  In reply, Defendant argues that the six prior art references were cited by the examiner on the face of the '345 Patent[8], (Dkt. No. 5-2 at 2).  Therefore, it did not have to re-disclose the prior art references in the continuation '045 Patent.  (Dkt. No. 25 at 6.)

Here, the Court is unable to determine as a matter of law whether the examiner of the '345 Patent "considered" the prior art references at issue in this case because there is a disputed issue of fact what "considered" means.  Therefore, the Court would deny Defendant's motion to dismiss this claim.

Next, the Complaint alleges that Defendant failed to disclose "numerous additional prior art references" based on its prosecution of the '045 and '345 Patents in China, the European Union, Austria and Japan that are materially relevant to the patentability of the claims in the "045 Patent and the "345 Patent.  (Dkt. No. 1, Compl. ¶ 67.)  Moreover, it alleges that Defendant and its counsel knew about these relevant prior art references.  (*Id.* ¶ 68.)

Defendant maintains that as to the Unidentified Prior Art References, the Complaint fails to comply with Rule 9(b) and *Exergen* requirements.  The Court agrees. The allegations concerning "unidentified" prior art references necessarily fail to satisfy the Rule 9(b) standard for inequitable conduct in patent cases because they are not identified.  In addition, paragraph 67 merely alleges the substantive elements of an inequitable claim without any supporting facts to identify "what" specific prior art was not disclosed to the Patent Office; "where" the material information can be found within

---

[8] On a motion to dismiss, the Court may consider the '345 Patent as it is incorporated by reference in the Complaint.  *See United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

the references; "why the prior art is material, and "how" an examiner would have used this information to determine patentability of the claims. *See Exergen,* 575 F.3d at 1327, 1329-30.  Moreover, the Complaint does not give rise to a reasonable inference of scienter including a specific intent to deceive the Patent Office. *Id.* at 1330. Accordingly, the Court GRANTS Defendant's motion to dismiss the claim relating to the unidentified prior art references.

### 2.   Inequitable Conduct – Failure to Submit Written Statement of an Interview with an Examiner, (Dkt. No. 1, Compl. ¶¶ 73-75).

The Complaint alleges that on July 9, 2009, Defendant and its counsel Cobos conducted an interview with the patent examiner about how "these references materially prevented the claims of the '045 Patent from becoming patentable." (Dkt. No. 1, Compl. ¶ 74.)  Defendant knew about its duty to submit a complete written statement, under 37 C.F.R. § 1.133, yet did not submit the statement to the Patent Office and breached its duty to disclose to the Patent Office about the patentability of the claims in the '345 Patent which affected the patentability of the '045 Patent.  (*Id.* ¶ 75.)

On this issue, Defendant asserts that Plaintiff's allegation is deficient because it claims that the '045 Patent is unenforceable based on Defendant's failure to submit a written statement, per 37 C.F.R. § 1.133(b)[9], of an examiner interview concerning the prosecution of the '345 Patent.  (Dkt. No. 5 at 20-22.)  Plaintiff does not explain how failure to file a written statement in the prosecution of the '345 Patent affects the patentability of the '045 Patent.  (*Id.*)  Moreover, the allegation fails to comply with Rule 9(b).  (*Id.*)  In response, Plaintiff argues that the allegations relating to this inequitable

---

[9] 37 C.F.R. § 1.133(b) provides that "[i]n every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office actions as specified in §§ 1.111 and 1.135."

21cv1393-GPC(RBB)

conduct are simple.  (Dkt. No. 24 at 17.)  It then presents facts outside the Complaint, and without evidentiary support, to support its argument.  (*Id.*)

First, the Court may not consider Plaintiff's additional facts as they are outside the Complaint.  Moreover, simply reciting the allegations in the Complaint in its opposition fails to explain the significance of how Defendant's failure to submit a written statement in the prosecution of the '345 Patent affects the enforceability of the '045 Patent.  Moreover, the Complaint fails to allege the specific intent element of inequitable conduct.  Thus, the Court GRANTS Defendant's motion to dismiss.

### 3.    Inequitable Conduct – Failure to Pay Maintenance Fees for the '345 Patent, (Dkt. No. 1, Compl. ¶¶ 76-79)

Defendant next claims that Plaintiff's allegation that late-paid maintenance fees for the '345 Patent makes the '045 Patent unenforceable is without merit.  While Defendant acknowledges that it failed to pay the maintenance fees for the '345 Patent, it submitted those fees with a declaration stating the failure to pay the fees was unintentional.  (Dkt. No. 5 at 22-23).  Moreover, because the fees were paid years after the '045 Patent was issued, the claim is without merit.

The Complaint alleges that Defendant failed to pay the required maintenance fees to maintain the '345 Patent and later claimed the failures were unintentional.  (Dkt. No. 1, Compl. ¶ 76.)  Defendant's failure to pay the maintenance fees was not unintentional because Defendant knew that the claims in the '345 Patent were less valuable and also similar to those in the '045 Patent and they intentionally chose not to continue maintaining the '345 Patent.  (*Id.* ¶ 77.)  It was only when the validity of the '045 Patent was challenged that Defendant resumed paying the maintenance fee for the '345 Patent.  (*Id.* ¶ 78).  Therefore, Defendant falsely declared that its failure to pay the maintenance fees was unintentional even though it knew those statements were false.  (*Id.*)

Here, both parties fail to cite the statute requiring maintenance fees, the significance of the failure to pay the maintenance, and any case law to support their

arguments.  They merely dispute the factual basis for this claim which is not proper on a motion to dismiss.[10]

Maintenance fees must be paid at 3 ½ years, 7 ½ years, and 11 ½ years after grant of a patent and each with a six-month grace period, in order to keep the patent in force.” 35 U.S.C. § 41(b).  Otherwise, “the patent shall expire as of the end of such grace period.”  *Id.* § 41(b)(2).  The Patent Office may accept payment of maintenance fees after the six-month grace period “if the delay is shown to the satisfaction of the Director to have been unintentional.”  *Id.* § 41(c).  “If the Director accepts payment of a maintenance fee after the 6-month grace period, the patent shall be considered as not having expired at the end of the grace period.”  *Id.*

As discussed above, the Complaint does not name the individual who filed the statement.  *See* 37 C.F.R. § 1.56(c).  Next, the Complaint fails to allege that the purported false declaration was material to the patentability of the ‘045 Patent and fails to allege the specific intent element to support a claim of inequitable conduct.   Accordingly, the Court GRANTS Defendant’s motion to dismiss.

### 4.    Inequitable Conduct – False Statements Made in Reissue Applications, (Dkt. No. 1, Compl. ¶¶ 80-90)

The Complaint alleges that Defendant presented false declarations with the Patent Office when prosecuting two reissue patent applications of the ‘045 Patent: reissue patent application no. 16/684,462, (‘462 Reissue Application), and reissue patent application no. 17/345,435, (‘435 Reissue Application).  (Dkt. No. 1, Comp. ¶ 80.)  According to Plaintiff, in the ‘462 Reissue Application, when Defendant and its counsel attempted to change the phrase “diffractive optical source” to “diffractive optical element”, the Patent

---

[10] In a footnote, Defendant asks the Court to take judicial notice of the petitions for acceptance of unintentional late payment of the maintenance fees for the ‘345 Patent and the ‘747 Provisional Applications.  (Dkt. No. 5 at 22 n. 4.)  The Court DENIES Defendant’s request for judicial notice as moot as the Court did not consider those documents in its ruling.

Office rejected all claims in the Application. (*Id.* ¶¶ 81, 82.) The inventor submitted a declaration explaining the purported change. (*Id.* ¶ 83.) Because of the rejection, Defendant expressly abandoned all claims in the '462 Reissue Application. (*Id.* ¶ 82.) But then in the '435 Reissue Application, Defendant and its counsel attempted to make the same change, but this time, the inventor provided a different explanation. (*Id.* ¶¶ 85, 86.) The Complaint claims the two inventor declarations cannot be reconciled for requesting the same change. (*Id.* ¶ 87.) Therefore, Plaintiff complains that Defendant made false statements to the Patent Office during the the two reissue applications. (*Id.* ¶ 90.)

In its moving papers, Defendant contends that any issue related to the '435 Reissue Application is not ripe since it is pending before the Patent Office and the '462 Reissue Application was ultimately abandoned. (Dkt. No. 5 at 23.) Plaintiff disagrees without much explanation or argument. (Dkt. No. 24 at 19-20.) In reply, Defendant further contends that the alleged false inventor declarations supporting two reissue applications for the '045 Patent, a patent issued years before, cannot support an inequitable conduct challenge of the '045 Patent.

The Court agrees. Charges of inequitable conduct before the Patent Office that would render a patent unenforceable contemplates that it concerns conduct leading up to the issuance of the patent. *See e.g., SSIH Equipment, S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 378-79 (Fed. Cir. 1983) (rejecting "as a matter of law" claim of unenforceability based on inequitable conduct alleged to have occurred three years after patent issued, and where such conduct concerned allegedly "interrrelated" patents for different inventions). Plaintiff provides no legal authority to support its argument that inequitable conduct based on the filing of two different inventor declarations filed in reissue applications years after the '045 Patent issued would affect its enforceability. Therefore, Plaintiff has failed to allege how the false declarations are material to patentability and also failed to allege specific intent. Accordingly, the Court GRANTS Defendant's motion to dismiss.

### 5.    Inequitable Conduct – False Statements About Entitlement to Priority Date of an Earlier-Filed Provisional Patent Application, (Dkt. No. 1, Compl. ¶¶ 91-95)

Lastly, the Complaint alleges that in prosecuting the '045 Patent and the two reissue applications, Defendant and its counsel falsely declared that the '045 Patent was entitled to a priority date of June 21, 2006 which is the date of the '747 Provisional Application.  (Dkt. No. 1, Compl. ¶ 91.)  It alleges that the '747 Provisional Application does not disclose a "diffractive optional source", an "interferential wheel positioned between [a] non-coherent lights source and [a] condenser len[]," and "a motor for rotating the inferential wheel, wherein the at least one non-coherent light source, the interferential wheel, the first condenser lends, and the motor generate a cloud-like effect when supplied with power from the power supply." (*Id.* ¶ 92.)  Based on these assertions, Plaintiff alleges that the '045 Patent is not entitled to the priority date of June 21, 2006.  (*Id.* ¶ 93.)  Further, Plaintiff claims that Defendant and its counsel knew that the '045 Patent was not entitled to the priority date of the '747 Provisional Application but made the false declarations with the Patent Office to fraudulently obtain patent coverage.  (*Id.* ¶ 95.)

Again, without sufficient factual basis or legal guidance, the parties dive into the factual dispute relating to this cause of action.  Defendant moves to dismiss without providing guidance as to the legal standard on this claim.  Plaintiff's opposition does not shed light on its claim and does not provide legal authority to support its argument and/or explain the significance of its allegations.  Moreover, the Complaint fails to allege specific intent or how these false statements regarding the asserted priority date are material to patentability.  Given these numerous deficiencies, the Court GRANTS the motion to dismiss this claim.

## F.    Third Cause of Action – Declaratory Judgment that Defendant's Lack Standing to Assert '045 Patent

The third cause of action seeks "Declaratory Judgment of Lack of Standing by Defendants to Assert U.S. Patent No. 8,057,045." (Dkt. No. 1, Compl. at 18.)  The

Complaint presents a factual challenge to Defendant's ownership of the '045 Patent based on declarations filed in the involuntary bankruptcy petitions.  (*Id.* ¶¶ 97-115.)  While not raised by Defendant, the Court has a continuing duty to confirm its jurisdictional power and is "obliged to inquire sua sponte whenever a doubt arises as to [its] existence," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977); thus, the Court concludes that its ruling on the first two causes of action for declaratory judgment relief also applies to the third cause of action.  Therefore, the third cause of action must be dismissed for lack of subject matter jurisdiction. Even though the third cause of action must be dismissed for lack of subject matter jurisdiction, the Court will proceed to address the substance of Defendant's motion to dismiss.

Once more, the parties have failed to address the legal standard to apply in reviewing this cause of action, and instead, proceed to litigate the facts underlying the cause of action asking the Court to resolve factual disputes by considering bankruptcy court documents attached to the Complaint.  (Dkt. No. 5 at 26-28; Dkt. No. 24 at 22-24). While the Court may consider documents attached to a complaint on a motion to dismiss, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), it may not use documents attached to the complaint to resolve factual disputes.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of [the document], which is not subject to reasonable dispute over its authenticity.'"); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) ("Although incorporation by reference generally permits courts to accept the truth of matters asserted in incorporated documents, we reiterate that it is improper to do so only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint.").  Therefore, at this stage of the proceedings, the Court finds it inappropriate to consider the contents to the bankruptcy filings to resolve the parties' disputed facts.  On a motion to dismiss, the moving party must articulate the elements of the cause of action and then explain why the complaint fails to plausibly

allege an element of the cause of action.  Defendant has failed to do so.  Accordingly, if the third cause of action had not been dismissed for lack of subject matter jurisdiction, the Court would have denied the motion to dismiss the third cause of action.

**G.      Fourth Cause of Action – Interference with Business Relationship; and Fifth Cause of Action – Unfair Business Practices, Cal. Bus. & Prof. Code sections 17200, 17500**

### 1.      Patent Law Preemption

Defendant moves to dismiss the state law claims of interference with business relationship and UCL claim as preempted by patent law because the Complaint does not allege that Defendant acted in bad faith in asserting the '045 Patent against Plaintiff. (Dkt. No. 5 at 29-30.)  Plaintiff avers that it has sufficiently alleged bad faith to avoid patent preemption.  (Dkt. No. 24 at 24-25.)  Defendant does not reply to Plaintiff's argument.  (*See* Dkt. No. 25.)

The fourth and fifth causes of action similarly claim that because Defendant, by making false patent infringement claims to Amazon.com,[11] it tortiously interfered with Plaintiff's business relationship with one or more customers or buyers of its products listed on Amazon.com.  (Dkt. No. 1, Compl. ¶¶ 117-22; 125.)

"State tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent."  *800 Adept, Inc. v. Murex Secs., Ltd.,* 539 F.3d 1354, 1369 (Fed. Cir. 2008) (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)).  To avoid patent law preemption, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim."  *Zenith Elecs., Corp.*, 182 F.3d at 1355.  "[I]f the patentee knows that the patent is invalid,

---

[11] The Court considers the allegations in the Complaint and does not rely on Exhibit B on this issue.

unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Id*. at 1354.

Here, the fourth and fifth claims allege, *inter alia*, that Defendant misrepresented and failed to disclose the invalidity of the '045 Patent, hid relevant prior art references from the Patent Office despite its affirmative duty to disclose these prior art references, and presented conflicting and false declarations when prosecuting the two reissue applications.  (Dkt. No. 1, Compl. ¶¶ 119, 125.)  These allegations plausibly allege Defendant acted in bad faith by publicizing its false patent infringement claim with Amazon.com.  Accordingly, the Court DENIES Defendant's motion to dismiss the state law claims as preempted.

### 2.   Failure to State a Claim

### i.   Interference with Business Relationship

Defendant next argues that the fourth cause of action fails to state a claim.  (Dkt. No. 5 at 30-31.)  Plaintiff disagrees explaining that the Complaint alleges inequitable conduct by Defendant before the Patent Office that violates the Code of Federal Regulations and patent statute.  (Dkt. No. 24 at 25.)

The Complaint labels the fourth cause of action as "Interference with Business Relationship" which the Court construes as intentional interference with prospective economic advantage.  "Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc*., 2 Cal. 5th 505, 512 (2017) (citing *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1164-65 (2003)).  A plaintiff alleging interference with a prospective relationship is also required "to allege an act that is wrongful independent of the interference itself." *CRST Van Expedited, Inc. v. Werner*

*Enters., Inc*. 479 F.3d 1099, 1108 (9th Cir. 2007).  An "act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply Co.,* 29 Cal. 4th at 1159.

Defendant simply argues that the Complaint "is devoid of any well-plead facts that Blisslights committed a wrongful act or that such wrongful act caused economic harm." (Dkt. No. 5 at 31.)  Yet, the Complaint clearly alleges conduct by Defendant that allegedly violates the Federal Code of Regulations and the Manual of Patent Examining Procedure.  (Dkt. No. 1, Compl. ¶¶ 49-52; 73.)  Moreover, Plaintiff alleges that this conduct caused it economic harm.  (*Id.* ¶¶ 117, 122.)  According, Defendant's unsupported argument is without merit, and the Court DENIES the motion to dismiss the fourth cause of action.

### ii.    UCL Claim

On the UCL claim,[12] Defendant claims that Plaintiff has not alleged any facts that it is entitled to restitution under the UCL because it has not pled that Defendant took any money in which Plaintiff had an identifiable interest, and to the extent it alleges it lost sales, those are damages, not restitution.  (Dkt. No. 5 at 31-33.)  Plaintiff responds that Defendant's conduct has caused it damages because Defendant has obtained ill-gotten profits and asks "Defendants to make full restitution and disgorgement of all monies wrongfully obtained directly or indirectly from Plaintiff as a result of the conduct described in this Complaint."  (Dkt. No. 1, Compl. ¶ 128.)

"The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."  *Korea Supply Co.,* 29 Cal. 4th at 1149.  In *Korea Supply*, the California Supreme Court announced two theories to support

---

[12] On this claim, Defendant also argues that Plaintiff has failed to allege facts to support each prong of the UCL claim.  (Dkt. No. 5 at 31-32.)  However, because Plaintiff has not alleged a proper basis for restitution which is dispositive of the issue, the Court declines to consider Defendant's additional arguments on whether Plaintiff sufficiently alleged the three prongs of the UCL.

a claim for restitution:  first, the court looks at whether the plaintiff is seeking the return of money or property that was once in its possession.  *Id.*  Second, the court considers whether the plaintiff has a "vested interest in the money it seeks to recover."  *Id.*  A "vested" interest is one that is "unconditional," "absolute," and "not contingent."  *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc*., 319 F. Supp. 2d 1059, 1080 (C.D. Cal. 2003) (citing Black's Law Dictionary).  "Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims."  *Korea Supply Co*., 29 Cal. 4th at 1151 (quoting *MAI Sys. Corp. v. UIPS* 856 F. Supp. 538, 542 (N.D. Cal. 1994)).

Here, Plaintiff claims it is seeking the loss of its profits due to Defendant's false claim of ownership of the '045 Patent which has "brought Defendant ill-gotten profits." (Dkt. No. 24 at 27.)  Plaintiff's claim for lost profits from its customers is essentially a measure of damages for the tort of interference with prospective economic advantage, and not restitution under the UCL.  *See Korea Supply*, 29 Cal. 4th at 1151 (rejecting plaintiff's theory of damages not seeking disgorgement of all defendant's profits but seeking the amount it allegedly would have obtained as a commission had it been awarded the contract); *see also Tortilla Factory, LLC v Better Booch, LLC*, Case No. 2:18-cv-02980-CAS(SKx), 2018 WL 4378700, at *10 (C.D. Cal. Sept. 13, 2018) (dismissing restitution damages as it was based diverted profits to the defendant and did not demonstrate plaintiff was once in "possession of property wrongfully acquired by [the defendant], or that it had a vested interest in [the defendant's] allegedly wrongfully obtained profits.").  Because Plaintiff is essentially seeking damages and has not sufficiently alleged it is entitled to restitution, the Court GRANTS Defendant's motion to dismiss the UCL claim.

## H.   Leave to Amend

In the event the Court dismisses any causes of action, Plaintiff seeks leave to amend.  (Dkt. No. 24 at 27.)  Because granting leave to amend would not be futile in this

case, the Court GRANTS Plaintiffs' request for leave to file an amended complaint. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**Conclusion**

Based on the reasoning above, the Court GRANTS Defendant's motion to dismiss with leave to amend.  Plaintiff shall file an amended complaint within 14 days of the Court's order.

IT IS SO ORDERED.

Dated:  November 10, 2021

Hon. Gonzalo P. Curiel
United States District Judge

21cv1393-GPC(RBB)